**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**BRIAN BENICK,**

    **Plaintiff,**

    **v.**

**MORROW COUNTY HEALTH DISTRICT,**

    **Defendant.**

**Case No. 2:20-cv-900**

**Magistrate Judge Kimberly A. Jolson**


**BRIAN BENICK,**

    **Plaintiff,**

    **v.**

**MORROW COUNTY HEALTH DISTRICT,**

    **Defendant.**

**Case No. 2:20-cv-1058**

**Magistrate Judge Kimberly A. Jolson**


**OPINION AND ORDER**

This matter, in which the parties have consented to the jurisdiction of the Magistrate Judge pursuant to 28 U.S.C. § 636(c) (2:20-cv-900, Doc. 18 (the "FMLA Action") and 2:20-cv-1058, Doc. 17 (the "ADA Action")), is before the Court on Defendant Morrow County Health District's Motions to Dismiss (FMLA Action, Doc. 12; ADA Action, Doc. 11).  For the reasons that follow, the Motions are **GRANTED in part and DENIED in part**.

## I.  BACKGROUND

Plaintiff is a former employee of Defendant Morrow County Health District ("Defendant or "Health District").  (FMLA Action, Doc. 1 at 1).  He worked for the Health District from May 18, 2010, to November 19, 2018, as the Director of Environmental Health.  (*Id.*).  Four years into

his employment, in July 2014, Plaintiff began experiencing "mental distress" as a result of his job. (*Id.* at 3).  His treating physician, Dr. Peter Zafirides, diagnosed him with Major Depressive Disorder; Recurrent and Attention Deficit Disorder ("ADD").  (*Id.* at 44).  Dr. Zafirides continued to treat Plaintiff, and Plaintiff continued his employment with the Health District.  (*Id.* at 3).

At some point in 2017, a group of Morrow County Commissioners approached Plaintiff and expressed concerns about how the Health District was being managed.  (*Id.* at 26). Specifically, Plaintiff alleges they expressed concern about the performance of Pamela Butler, the Health Commissioner, as well as certain of Defendant's Board members.  (*Id.*).  Ms. Butler was Plaintiff's boss.  (*Id.* at 2).  Then, in December 2017, certain Morrow County Commissioners contacted Plaintiff and requested the attendance records of one of Defendant's Board members, Jim Albertson, which Plaintiff provided to them.  (*Id.* at 27).  Those records allegedly showed Mr. Albertson was not in compliance with Ohio law due to his frequent absences from Defendant's Board meetings.  (*Id.*).

Shortly thereafter, in January 2018, the Morrow County Prosecutor, Charles Howland, allegedly informed Ms. Butler that Plaintiff was cooperating with the Morrow County Commissioners.  (*Id.* at 27–29).  Ms. Butler responded by isolating Plaintiff and refusing to communicate with him.  (*Id.*).  Despite the alleged retaliation, Plaintiff continued to communicate with the Morrow County Commissioners about their concerns with Defendant's management, and Plaintiff sought whistleblower protection.  (*Id.* at 28–29).

In February 2018, Ms. Butler continued to isolate Plaintiff and refused to communicate with him, causing him significant distress.  (*Id.*).  Dr. Zafirides then "insisted" that Plaintiff take sick leave due to the stress he was experiencing at work.  (*Id.* at 3).  Beginning on February 12, 2018, Plaintiff took two weeks of sick leave.  (*Id.* at 29).

On February 19, 2018, Dr. Zafirides sent a letter to Ms. Butler informing her that he had been treating Plaintiff for Major Depressive Disorder; Recurrent and ADD since July 2014 and that Plaintiff's "mood symptoms" had recently been exacerbated by stress at work. (*Id.* at 44). Dr. Zafirides expressly noted that Plaintiff's depression and ADD were protected conditions under the Americans with Disabilities Act ("ADA") and that he had informed Plaintiff of his statutory rights. (*Id.*).

The next day, February 20, 2018, Defendant provided Plaintiff with a Notice of Eligibility and Rights & Responsibilities (Family and Medical Leave Act). (*Id.* at 64–65). The Notice indicated that Plaintiff had informed Defendant that he needed leave beginning on February 12, 2018, and confirmed that he was eligible for FMLA leave. (*Id.* at 64). Defendant requested that Plaintiff provide additional information by March 6, 2018. (*Id.*). The Notice further represented that Plaintiff had the right to 12 weeks of unpaid leave under the FMLA. (*Id.* at 65).

On February 26, 2018, Dr. Zafirides signed a note that purported to "serve as official medical verification of" Plaintiff's medical condition and stated that it was medically necessary for Plaintiff to extend his leave until March 18, 2018. (*Id.* at 63). Plaintiff alleges that he provided his February 26, 2018 "leave slips" to Mr. Howland. (*Id.* at 4).

On February 27, 2018, Ms. Butler sent Plaintiff a letter indicating that Defendant had received and approved his request for FMLA leave through February 25, 2018, but emphasized that Plaintiff had not provided any additional documentation supporting leave beyond that date. (*Id.* at 72). Ms. Butler wrote that, absent additional leave being necessary, Defendant expected Plaintiff to return to work on March 1, 2018. (*Id.*). Finally, Ms. Butler noted that she understood that Plaintiff was "in need of accommodation for a medical condition" and that she "would like to speak with [him] regarding any accommodations [he] may need" when he returned to work. (*Id.*).

On March 1, 2018, Ms. Butler sent a follow-up letter, noting that Plaintiff had not contacted her about additional leave being necessary and had not returned to work. (*Id.* at 74). If Plaintiff did not return to work by March 5, 2018, she indicated, Defendant would assume that he had voluntarily resigned. (*Id.*). In response, Mr. Howland allegedly provided Ms. Butler with Plaintiff's "leave slips" extending his FMLA leave until March 18, 2018. (*Id.* at 5; *id.* at 76).

Despite being on FMLA leave, Plaintiff alleges, on March 16, 2018, one of Defendant's Board members pressured him to return to work on March 19, 2018. (*Id.* at 6). On March 18, 2018, Dr. Zafirides signed a note indicating that Plaintiff's FMLA leave should be extended for an additional 30 days. (*Id.* at 70). The next day, March 19, 2019, Plaintiff returned to work, (*id.* at 6), but Defendant's Board voted to terminate him that evening, (*id.* at 148).

After his termination on March 19, 2020, Plaintiff contacted Mr. Howland and requested that Mr. Howland declare Defendant's decision to terminate him "improper" because he was on FMLA leave with "an ADA-protected condition." (*Id.* at 152). That same day, Ms. Butler circulated an email stating that Plaintiff "was no longer employed" by Defendant. (*Id.* at 153).

Shortly thereafter, Mr. Howland sent a letter to Ms. Butler, requesting that she "contact the members of the Morrow County Board of Health … to have a special meeting and rescind" Plaintiff's termination. (*Id.* at 154–55). In making his request, Mr. Howland noted: The March 19 meeting of Defendant's Board violated Ohio's Open Meeting Laws and was therefore invalid; Plaintiff was a member of a protected class due to his age; and Plaintiff was on medical leave at the time of his termination. (*Id.*).

On April 3, 2018, Defendant's Board held a hearing to discuss Plaintiff's employment. The Board issued a statement:

> It has come to our attention tonight that employee, Brian Benick, was on FMLA medical leave on March 19, 2018 and any formal action taken by the Board on that

4

date regarding Mr. Benick should be rescinded and Mr. Benick should remain on leave until April 16, 2018. He is on leave and may return to advise the Board at the next Board Meeting on April 16, 2018 if he is to continue this medical leave after this date.

(*Id.* at 161). Defendant's Board then voted to rescind Plaintiff's termination. (*Id.*).

Ms. Butler communicated with Plaintiff the next day. (*See id.* at 162). She indicated that Plaintiff's termination on March 19, 2018, was based on his representation that he was returning to work and his failure to communicate with her regarding any extension of his FMLA leave. (*Id.*). She further directed him to provide medical documentation substantiating his request for an extension of his leave through April 15, 2018. (*Id.*). On April 13, 2018, Dr. Zafirides extended the need for Plaintiff's medical leave through May 4, 2018, noting an "ongoing struggle with [Plaintiff's] ADA-protected medical conditions." (*Id.* at 71).

Before returning to work, Plaintiff's former counsel sent a letter to Ms. Butler, addressing the need for Defendant to provide him certain accommodations upon his return:

> Mr. Benick expects to return to work on May 7, 2018. Mr. Benick is currently still suffering from his depression and anxiety which has been exasperated [sic] by the hostile work environment and retaliation that he has suffered while employed at Morrow County. As Mr. Benick's severe depression and anxiety is substantially limiting and not temporary, Mr. Benick requests the following reasonable accommodations:
>
> 1. Mr. Benick shall report to the county commissioners, and if reporting to the county commissioners is unreasonable, then he shall report to a new supervisor;
>
> 2. If Mr. Benick must report to his current supervisor, than [sic] all communications shall be done in writing; and
>
> 3. If Mr. Benick must communicate with his current supervisor in person or over the phone, then he shall select an employee representative and have his employee representative present during such discussion.
>
> With these reasonable accommodations, Mr. Benick would be able to perform his duties and responsibilities of his position.

5

(ADA Action, Doc. 1-1 at 119).

Defendant responded to Plaintiff's request for accommodation:

We understand Mr. Benick has requested to have either County Commissioner Burgess Castle or Board of Health Member Glenn Bragg serve as a neutral representative in all verbal communications between Mr. Benick and his direct supervisor Health Commissioner Pam Butler. We have discussed Mr. Benick's specific request with Ms. Butler. Based upon Mr. Benick's essential job functions and the Health District's operational needs, the accommodations agreed upon by the Health District remain the same:

- Ms. Butler will continue to serve as Mr. Benick's direct supervisor, however, all communications between Mr. Benick and Ms. Butler will be in writing, specifically email or other written correspondence delivered through the Health District's mailbox system.

- If a verbal communication between Mr. Benick and Ms. Butler is necessary, Stephanie Bragg, Director of Nursing, will serve as a neutral representative and will be present and/or participate in any and all verbal communications.

Additionally, the Health District is willing to accommodate Mr. Benick by permitting him to work from home. If Mr. Benick opts to work from home, the Health Department will extend his leave of absence through this week to permit the Health Department time to establish the parameters and implement this accommodation. Mr. Benick would begin working from home, Monday, May 14, 2018.

If Mr. Benick prefers to work in the office, he is to report to work tomorrow, May 8, 2018 with the accommodations outlined above in place.

(*Id.* at 121).

Plaintiff returned to work in early May 2018. Upon his return, he alleges he found that his office had been "purposefully trashed" and that he was subject to unfounded criticism. (FMLA Action, Doc. 1 at 13). Ms. Butler allegedly reduced Plaintiff's supervisory responsibilities so that he no longer supervised any employees. (*Id.* at 14). Further, she provided Plaintiff with a list of "key priorities" that he needed to complete, including a draft environmental health operations plan

and a division succession plan to be completed by June 4, 2018. (*Id.* at 219). In the month following Plaintiff's return to work, communications between Plaintiff and Ms. Butler reflected a tense workplace environment. (*See, e.g.*, *id.* at 220–29, 240–41, 243–45).

According to Plaintiff, one of those communications is particularly relevant here. On May 31, 2018, Ms. Butler emailed Plaintiff:

> I wanted you to know that there have been some changes in the organizational chart. Karrie, Lynne, Stephanie Z, and Rodney were all reporting directly to me. Karrie, Lynne and Stephanie will still report to me.
>
> It has been reported to me that you have been somewhat abrupt, disrespectful and you are causing anxiety and stress to Stephanie among others. This was a problem in the past as found in some of your past emails regarding Stephanie. *Since it is difficult to communicate with you, I will do the managing of these employees. MCHD does not want or need more accommodations in the workplace.*
>
> It was also reported that you seem to be reporting employees to the county commissioners and are directing community members to report employees to the county commissioners as well. This, in my opinion, does not make any sense. The county commissioners do not have jurisdiction over and are not responsible for MCHD employees

(ADA Action, Doc. 1-1 at 141–42 (emphasis added)). But that same day, Ms. Butler completed an Employee Job Performance Review for Plaintiff, finding that he consistently met expectations across subject areas. (*Id.* at 148–51).

Roughly one month later, on July 2, 2018, Defendant's Board voted to place Plaintiff on paid administrative leave as a result of the Ohio Department of Health's "audit and investigation into Morrow County Health District's sewage program for which" Plaintiff was responsible. (FMLA Action, Doc. 1 at 186).

Defendant terminated Plaintiff's employment on November 19, 2018, for allegedly violating Defendant's "Violence in the Workplace Policy" by threatening to punch Mr. Howland and acting in an intimidating manner at a meeting earlier in 2018. (*Id.* at 116, 259).

## II.     STANDARD OF REVIEW

Rule 12(b)(6) of the Federal Rules of Civil Procedure requires that a complaint "state a claim to relief that is plausible on its face" to survive a motion to dismiss.  *Ashcroft v. Iqbal*, 556 U.S. 662, 663–64, 678 (2009); *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 570 (2007).  In reviewing the complaint, a court must construe it in favor of the plaintiff and accept all well-pleaded factual allegations as true.  *Twombly*, 550 U.S. at 555–56.  "A claim has facial plausibility when the plaintiff pleads *factual content* that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678 (emphasis added) (citing *Twombly*, 550 U.S. at 556).

On the other hand, a complaint that consists of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" is insufficient.  *Twombly*, 550 U.S. at 555; *see also Brown v. Matauszak*, 415 F. App'x 608, 613 (6th Cir. 2011) (noting that a plaintiff must give specific, well-pleaded facts, not just conclusory allegations).  In other words, while "detailed factual allegations" are not required under Fed. R. Civ. P. 8(a)(2)'s "short and plain statement" rule, the law "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Iqbal*, 556 U.S. at 677–78 (quoting *Twombly*, 550 U.S. at 555).

## III.     DISCUSSION

Defendant moves to dismiss Plaintiff's FMLA and ADA claims.  Generally, it argues that Plaintiff's Complaints should be dismissed because they fail to satisfy basic pleading requirements.  (FMLA Action, Doc. 12 at 3–5; ADA Action, Doc. 11 at 3–5).  And, more specifically, Defendant contends that Plaintiff's Complaint fails to state a claim for FMLA interference, FMLA retaliation, ADA discrimination, or a failure to accommodate under the ADA.  (FMLA Action, Doc. 12 at 5–7; ADA Action, Doc. 11 at 5–7).

### A. Basic Pleading Requirements

Defendant emphasizes that Plaintiff has failed to comply with the following basic pleading requirements:

- A pleading must contain "a short and plain statement of the grounds for the court's jurisdiction" and a "short [and] plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a).

- "Each allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(d).

- "A party must state its claims … in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b).

(FMLA Action, Doc. 12 at 4; ADA Action, Doc. 11 at 4). In Defendant's view, "[t]he factual allegations in the Complaint[s] are convoluted, excessively detailed, and unnecessarily complicated," (FMLA Action, Doc. 12 at 2; ADA Action, Doc. 11 at 3), and, as a result, Plaintiff's Complaints should be dismissed, (*see* FMLA Action, Doc. 12 at 3–5; ADA Action, Doc. 11 at 3–5).

Plaintiff does not have a lawyer in this case. As such, his pleadings are "to be liberally construed" and are "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (*per curiam*). But even as a *pro se* litigant, he still must satisfy basic pleading requirements. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989).

To be sure, Plaintiff's Complaints are not models of clarity. They include excessive and irrelevant details and rely on more than 90 exhibits to provide relevant factual information. But that is true of many, if not most, of the *pro se* complaints filed in this Court. Absent a failure to follow the Court's guidance, the Court is generally reluctant to dismiss a *pro se* complaint in this situation. *Cf. Diamond v. Premier Mfg./Voith Indus. Servs.*, No. 11-12228, 2012 WL 313996, at *5 (E.D. Mich. Jan. 6, 2012), *report and recommendation adopted sub nom. Diamond v. Premier MFG/Voith Indus. Servs.*, No. 11-CV12228-DT, 2012 WL 314075 (E.D. Mich. Jan. 31, 2012) ("In

this case, plaintiff has had the benefit of clear and specific direction from the Court as how to properly amend his complaint and, as Voith points out, plaintiff was essentially given a 'roadmap' regarding the facts and allegations necessary to prepare his complaint as set forth in the various motions to dismiss. Plaintiff has chosen to ignore all this information and instead, continually plows forward with lengthy, nonsensical, and difficult to understand submissions. Plaintiff has already had the opportunity to amend his complaint and has failed to do so properly. Thus, the undersigned recommends that plaintiff's complaint be dismissed in its entirely, without prejudice.").  Given Plaintiff's *pro se* status, the Court finds that he has done enough to satisfy basic pleading requirements here.

### B.  Failure to State a Claim

Defendant additionally contends that Plaintiff's Complaints fail to state the necessary elements to bring an FMLA or ADA claim.  The Court addresses each of these arguments in turn.

#### 1.  *FMLA Claims*

In the FMLA Action, Plaintiff brings two claims: (1) Defendant interfered with his FMLA leave, and (2) Defendant retaliated against him for taking FMLA leave.  Initially, Defendant responded to Plaintiff's Complaint by arguing that he had failed to state a claim for discrimination under Title VII or the ADEA.  (*Id.* at 7–8.)  In response, Plaintiff concedes that he is not attempting to bring any non-FMLA claims in this action.  (FMLA Action, Doc. 13 at 2).  So that issue is not before the Court.  What remains before the Court is Defendant's argument that Plaintiff has failed to state an FMLA claim.  (FMLA Action, Doc. 12 at 5–8.)

Defendant's arguments are based on Plaintiff's purported failure to allege facts demonstrating a *prima facie* case of FMLA interference and retaliation.  But, as a threshold matter, the Court questions whether that is required at this stage of the case.  In employment cases, the

elements of a *prima facie* case come from the *McDonnell Douglas* framework, and, in the Sixth Circuit, that framework applies to both interference and retaliation claims under the FMLA, *see Donald v. Sybra, Inc.*, 667 F.3d 757, 762 (6th Cir. 2012) ("*Grace* requires the conclusion that the district court correctly applied *McDonnell Douglas* to both Donald's interference and retaliation claims."). But that framework "is an evidentiary standard"—"not a pleading requirement." *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 510 (2002). It follows, then, that the question is not whether Plaintiff has pled a *prima facie* case for FMLA interference or retaliation, but, instead whether Plaintiff has complied with Rule 8(a) and "give[n] the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Id.* at 512 (citation and quotations omitted).

Plaintiff has satisfied that low bar here. He has alleged: He was eligible for FMLA leave; he took FMLA leave; while he was on FMLA leave, Defendant interfered with that leave by forcing him to work and terminating him; and, upon his return to work, Defendant engaged in a pattern of retaliation that resulted in his suspension and termination, all allegedly because he took FMLA leave. These allegations provide Defendant with fair notice of Plaintiff's claims.

Moreover, even assuming that Plaintiff was required to plead the elements of a *prima facie* case, the Court finds that he has done so here as discussed below.

a. FMLA Interference

Reciting the elements of a *prima facie* case of FMLA interference, Defendant argues that "Benick's Complaint fails to allege that he was an eligible employee, that MCHD was a covered employer, that he was entitled to take FMLA leave, or that he notified MCHD of his intent to take FMLA leave." (FMLA Action, Doc. 12 at 5). Further, Defendant asserts, Plaintiff alleges that he took 12 weeks of FMLA leave and, therefore, has no claim because he received all the FMLA

11

leave to which he was entitled.  (*Id.*).

The FMLA provides that "[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise" any rights under the FMLA and that "any eligible employee who takes leave ... shall be entitled, on return from such leave (A) to be restored by the employer to the position of employment held by the employee when the leave commenced; or (B) to be restored to an equivalent position."  29 U.S.C. § 2615(a)(1); 29 U.S.C. § 2614(a)(1).

> To prevail on an FMLA interference claim, a plaintiff must establish that (1) he was an eligible employee as defined under the FMLA; (2) his employer was a covered employer as defined under the FMLA; (3) he was entitled to leave under the FMLA; (4) he gave the employer notice of his intention to take FMLA leave; and (5) his employer denied FMLA benefits to which he was entitled.

*Dyer v. Ventra Sandusky, LLC*, 934 F.3d 472, 475 (6th Cir. 2019) (citing *Demyanovich v. Cadon Plating & Coatings, L.L.C.*, 747 F.3d 419, 427 (6th Cir. 2014)).

Here, Plaintiff alleges that (1) he was an eligible employee as defined under the FMLA; (2) Defendant was a covered employer as defined under the FMLA; (3) he was entitled to leave under the FMLA; and (4) he notified Defendant of his intention to take FMLA leave.  (*See* FMLA Action, Doc. 1 at 64–65 (Defendant's February 20, 2018 Notice of Eligibility and Rights & Responsibilities (Family and Medical Leave Act) for Plaintiff informing him that he was eligible for up to 12 weeks FMLA leave and approving him for leave through February 25, 2018)). Admittedly, when Plaintiff notified Defendant of each of his extensions of his leave is less clear. (*Compare* FMLA Action, Doc. 1 at 63 (Dr. Zafirides' February 26, 2018, note stating that it was medically necessary for Plaintiff to extend his leave until March 18, 2018) *with id.* at 72 (Ms. Butler's February 27, 2018, letter, stating, "We granted your request for leave through February 25, 2018 … To date, you have not informed us or provided any documentation of a need for additional leave but you have not returned to work … While on leave, you are prohibited from

12

working in any capacity. This includes checking emails and coming into the office. Please discontinue all work activity until you return to work.")). But at the pleadings stage, this ambiguity is not important.

The only question then is whether Plaintiff has pled that Defendant denied him FMLA benefits to which he was entitled. That is not a difficult question to answer on the allegations before the Court. Plaintiff alleges that Defendant deprived him of his FMLA rights in several ways, including, *inter alia*: (1) requiring him to work during his FMLA leave, (FMLA Action, Doc. 1 at 5); (2) terminating his employment during his FMLA leave, (*id.* at 6, 8); and (3) failing to restore him to the position he held when he commenced his leave or an equivalent position, (*id.* at 14). On these allegations, Defendant interfered with Plaintiff's FMLA rights. *See* 29 U.S.C. § 2614(a)(1) ("[A]ny eligible employee who takes leave under section 2612 of this title for the intended purpose of the leave shall be entitled, on return from such leave--(A) to be restored by the employer to the position of employment held by the employee when the leave commenced; or (B) to be restored to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment."); *Dyer*, 934 F.3d at 476 ("[D]enying a valuable term or condition of employment to an employee taking FMLA leave interferes with the right to take that leave."); *cf. Groening v. Glen Lake Cmty. Sch.*, 884 F.3d 626, 633 (6th Cir. 2018) ("Groening has failed to show that the board interfered with her leave by requiring her to work.").

Yet Defendant argues that Plaintiff was not denied any FMLA rights because he received all 12 weeks of FMLA leave to which he was entitled. (FMLA Action, Doc. 12 at 5; FMLA Action, Doc. 16 at 1–2). Generally, when a plaintiff is permitted to take all the FMLA leave to which he is entitled and he is then restored to the position he held prior to his FMLA leave, no FMLA interference has occurred. *See, e.g.*, *Marshall v. The Rawlings Co. LLC*, 854 F.3d 368, 385

13

(6th Cir. 2017) (holding that the plaintiff's FMLA interference claim failed because she received all of the FMLA leave she requested and was reinstated following those absences, her employer prorated her production standards to account for the days she was out on FMLA leave, and her demotion and termination occurred months after she was initially reinstated to the position she held before taking leave).

Perhaps the facts will bear out Defendant's position as this case progresses. But, as discussed above, that is not what Plaintiff alleges occurred here. To the contrary, he alleges that legally significant harm came to him when he tried to take FMLA leave. (*See* FMLA Action, Doc. 1 at 5, 6, 8, 14). Because the Court is obligated to view the Complaint in the light most favorable to Plaintiff, his version of events carries the day for now.

### b.  FMLA Retaliation

Defendant further argues that Plaintiff has failed to state a *prima facie* case of FMLA retaliation because: (1) he has not alleged that it was aware that he had taken FMLA leave, and (2) he was terminated for violating Defendant's policy regarding violence in the workplace. (FMLA Action, Doc. 12 at 6–7).

The FMLA "affords employees protection in the event they suffer retaliation or discrimination for exercising their rights under the FMLA. Specifically, [a]n employer is prohibited from discriminating against employees … who have used FMLA leave, nor can they use the taking of FMLA leave as a negative factor in employment actions." *Marshall*, 854 F.3d at 376 (citation and quotations omitted). "This prohibition includes retaliatory discharge for taking leave." *Id.* (citation and quotations omitted).

To state a *prima facie* case of FMLA retaliation, a plaintiff must allege facts showing:

(1) she was engaged in an activity protected by the FMLA; (2) the employer knew that she was exercising her rights under the FMLA; (3) after learning of the

14

employee's exercise of FMLA rights, the employer took an employment action adverse to her; and (4) there was a causal connection between the protected FMLA activity and the adverse employment action.

*Redlin v. Grosse Pointe Pub. Sch. Sys.*, 921 F.3d 599, 616 (6th Cir. 2019) (quoting *Donald v. Sybra*, 667 F.3d 757, 761 (6th Cir. 2012)).

Here, Plaintiff alleges that Defendant and its employees retaliated against him immediately upon his return to work in May 2018 from his FMLA leave. (FMLA Action, Doc. 1 at 10–15). According to him, certain of Defendant's employees trashed his desk, subjected him to unfounded criticism, eliminated his supervisory authority, reduced his responsibilities, and conspired to terminate his employment. (*Id.*). Defendant subsequently terminated Plaintiff on November 19, 2018. (*Id.* at 16).

These allegations are sufficient to satisfy the first three elements of an FMLA retaliation claim. One, Plaintiff alleges that he engaged in protected activity under the FMLA by taking FMLA leave from February through early May 2018. (*See* FMLA Action, Doc. 1 at 3–12). Two, Defendant knew that Plaintiff was exercising his rights under the FMLA. (*See id.* at 64–65 (Defendant's February 20, 2018, Notice of Eligibility and Rights & Responsibilities (Family and Medical Leave Act) for Plaintiff informing him that he was eligible for up to 12 weeks FMLA leave and approving him for leave through February 25, 2018); *id.* at 161 (April 3, 2018 statement by Defendant's Board acknowledging that Plaintiff "was on FMLA medical leave" at the time of his March 19, 2018, termination and rescinding that termination)). Three, after learning that Plaintiff took FMLA leave, Defendant terminated his employment. (*Id.* at 16).

The remaining question is whether there was a causal connection between Plaintiff taking FMLA leave and Defendant terminating his employment. As alleged here, the Court finds that a causal connection has been sufficiently pled. Given Defendant's initial attempt to fire Plaintiff

while he was on FMLA leave, its employees' alleged pattern of retaliation and harassment of Plaintiff after he returned from FMLA leave, and the temporal proximity of Plaintiff's November 2018 termination to his return from FMLA leave, Plaintiff has alleged sufficient facts to satisfy the causal connection requirement. *See Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724, 737 (6th Cir. 2006) (citing *Little v. BP Exploration & Oil Co.,* 265 F.3d 357, 363–64 (6th Cir. 2001); *Nguyen v. City of Cleveland,* 229 F.3d 559, 566–67 (6th Cir. 2000)) (holding that "a temporal connection coupled with other indicia of retaliatory conduct may be sufficient to support a finding of a causal connection"); *cf. Tennial v. United Parcel Serv., Inc.*, 840 F.3d 292, 308–09 (6th Cir. 2016) (citing *Nguyen*, 229 F.3d at 566–67) ("Temporal proximity of more than six months, standing alone, has not been found to support an inference of retaliatory discrimination absent other compelling evidence.").

Defendant's two arguments to the contrary are not persuasive. First, although Defendant argues otherwise, (*see* FMLA Action, Doc. 12 at 6), Plaintiff has alleged that Defendant—and specifically its Board—knew that Plaintiff had taken FMLA leave at the time it terminated him in November 2018, (*see* FMLA Action, Doc. 1 at 161 (April 3, 2018, statement by Defendant's Board acknowledging that Plaintiff "was on FMLA medical leave" at the time of his March 19, 2018, termination and rescinding that termination)).

Second, Defendant maintains that it terminated Plaintiff for violating its policy regarding violence in the workplace, not for taking FMLA leave, and that Plaintiff's retaliation claims fails as a result. (FMLA Action, Doc. 12 at 6–7). That argument, however, is appropriate for summary judgment, not at the motion to dismiss stage. At this stage, the Court construes the Complaint in the light most favorable to Plaintiff; doing that here makes clear that Plaintiff alleges he was fired for taking FMLA leave. Later in this proceeding, Defendant may attempt to show that Plaintiff

was terminated for a nondiscriminatory reason under the *McDonnell Douglas* framework. *See Marshall*, 854 F.3d at 379 (articulating *McDonnell Douglas* burden-shifting standard in context of an FMLA retaliation claim). Defendant's argument is, therefore, premature at this stage of the case.

### 2. ADA Claims

Plaintiff brings two ADA claims, alleging that (1) Defendant discriminated against him on account of his disability and (2) Defendant failed to accommodate his reasonable request for accommodation. Defendant maintains that Plaintiff fails to state a claim with respect to both of these claims. (ADA Action, Doc. 11 at 5–7).

The ADA prohibits an employer from "discriminat[ing] against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Relevant here, "the term 'discriminate against a qualified individual on the basis of disability' includes":

> (5)(A) not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity; or
>
> (B) denying employment opportunities to a job applicant or employee who is an otherwise qualified individual with a disability, if such denial is based on the need of such covered entity to make reasonable accommodation to the physical or mental impairments of the employee or applicant;

42 U.S.C. § 12112(b)(5)(A)-(B).

### a. ADA Discrimination

Defendant challenges Plaintiff's ADA claims in two ways. It begins by asserting that Plaintiff has not alleged that he was disabled under the ADA. (ADA Action, Doc. 11 at 6). And

17

then it argues that Plaintiff has failed to allege that Defendant knew that Plaintiff had a disability and terminated him because of it. (*Id.*).

The Court disagrees. As explained above, Defendant's argument confuses the elements of a *prima facie* case with Rule 8's pleading standard. It fails for the same reason. "[A]t the pleading stage, a Plaintiff is not required to 'plead facts establishing the prima facie case of discrimination' but is required to show he 'was disabled or regarded as disabled and that [he] was otherwise qualified for a position.'" *Denoewer v. Union Cty. Indus.*, No. 2:17-CV-660, 2020 WL 1244194, at *8 (S.D. Ohio Mar. 16, 2020) (quoting *Morgan v. St. Francis Hosp.*, No. 19-5162, 2019 WL 5432041, at *1 (6th Cir. Oct. 3, 2019)); *see also Denoewer*, 2020 WL 1244194, at *8 (citation, quotations, and internal alteration omitted) ("[A]s this Court and the Supreme Court have previously determined, a Plaintiff is not required to make out a prima facie case using either the direct evidence or *McDonnell Douglas* standards at the pleading stage where the complaint sets forth the details leading to the adverse employment action and provides the defendant with fair notice of the plaintiff's claims and his bases for asserting them."); *Parker v. Magna Seating, Inc.*, No. 1:20-CV-00003, 2020 WL 1061975, at *3 (M.D. Tenn. Mar. 5, 2020) (quoting *Morgan*, 2019 WL 5432041, at *1) ("So long as the complaint alleges that Plaintiff was disabled or regarded as disabled and otherwise qualified for his position, Plaintiff need only 'give [Magna Seating] fair notice of what his claim is and the grounds upon which it rests.'").

Plaintiff has done that here. He alleges that: he was disabled with Major Depressive Disorder; Recurrent and ADD, (ADA Action, Doc. 1-1 at 38); he was qualified for his job, (*see id.* at 119 (asserting that he was capable of performing his job duties with reasonable accommodations); *id.* at 148–51 (Plaintiff's May 2018 performance review stating that he met expectations in all areas of his job)); and Defendant terminated him because of his disability, (*see*

18

*supra* at 6–7 (detailing alleged criticism and retaliation following Plaintiff's request for reasonable accommodation and subsequent suspension and termination)).  That is all that is required at this stage of proceedings.  *See Denoewer*, 2020 WL 1244194, at *8.

Defendant's arguments to the contrary are not persuasive.  While it argues that Plaintiff has not alleged that he was disabled, (ADA Action, Doc. 11 at 6), the Complaint and attached exhibits demonstrate otherwise, (*see* ADA Action, Doc. 1-1 at 38 (alleging that he was disabled with Major Depressive Disorder; Recurrent and ADD)).

Defendant's next argument fares no better. It contends Plaintiff's discrimination claim fails because its Board had no knowledge that Plaintiff was disabled and that it terminated Plaintiff because of his violation of Defendant's policy prohibiting violence in the workplace.  (ADA Action, Doc. 11 at 6).  Perhaps discovery will demonstrate as much.  But that is an argument for another day, not a motion to dismiss.

Looking at the ADA Complaint, Plaintiff has alleged that, via his doctor and former counsel, he repeatedly communicated to Defendant that he was disabled pursuant to the ADA.  (*See* ADA Action, Doc. 1-1 at 38 (informing Ms. Butler that Plaintiff was disabled due to his Major Depressive Disorder; Recurrent and ADD and that he would need to take FMLA leave); *id.* at 104 (rescinding Plaintiff's March 2018 termination based on the Board's understanding that he was on FMLA leave); *id.* at 119 (requesting accommodations for Plaintiff based on his depression and anxiety when he returned to work); *id.* at 121 (Defendant's response to Plaintiff's request for accommodation)).  And he has alleged sufficient facts for the Court to infer at this stage of proceedings that he was terminated because of his alleged disability.  (*See supra* at 6–7 (detailing alleged criticism and retaliation following Plaintiff's request for reasonable accommodation and

subsequent suspension and termination)).

The Court will deny Defendant's Motion to Dismiss with respect to Plaintiff's disability discrimination claim accordingly.

### b. ADA Reasonable Accommodation

Defendant also argues that Plaintiff has failed to allege that it denied him any accommodation that he requested. (ADA Action, Doc. 11 at 7). The Court agrees that Plaintiff has not provided Defendant fair notice of the grounds for his failure-to-accommodate claim. While he has alleged that he requested a number of accommodations for his alleged disability, (*see* ADA Action, Doc. 1-1 at 119), as best the Court can tell, he offers no substantive allegations that Defendant denied him a requested accommodation.

Rather than dismissing Plaintiff's failure-to-accommodate claim, the better course is to allow Plaintiff an opportunity to add plausible allegations addressing this deficiency. *See Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013) (citations, alterations, and internal quotation marks omitted) ("A *pro se* complaint should not be dismissed without the Court's granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated."); *Brewster v. Dretke*, 587 F.3d 764, 767–68 (5th Cir. 2009) (citation omitted) ("Generally, ... a *pro se* litigant should be offered an opportunity to amend his complaint before it is dismissed."); *see also Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & Nw. Indiana*, 786 F.3d 510, 519 (7th Cir. 2015) ("[A] plaintiff whose original complaint has been dismissed under Rule 12(b)(6) should be given at least one opportunity to try to amend her complaint before the entire action is dismissed."). The Court **GRANTS** Plaintiff 14 days in which to file an amended complaint, solely for the purpose of providing additional allegations to support his claim that Defendant denied him a request for accommodation under the

ADA.

## IV.    MEDIATION

Given Plaintiff's *pro se* status and this Opinion and Order, the Court has concluded that this is an opportune time to attempt to resolve this case extrajudicially.  The Court additionally finds, in its discretion, that appointment of counsel is warranted to make a mediation as productive as possible.  This Court has "broad discretion in determining whether to appoint counsel for an indigent civil litigant."  *Brooks v. Airmart Food Serv.*, No. 05-2893-B/V, 2006 WL 1699560, at *2 (W.D. Tenn. June 16, 2006) (citing *Lavado v. Keohane*, 992 F.2d 601, 604–605 (6th Cir. 1993)); *see* 28 U.S.C. § 1915(d) (1988) ("The court may request an attorney to represent any person unable to afford counsel."); *see also Henry v. City of Detroit Manpower Dep't*, 763 F.2d 757, 760 (6th Cir. 1985).

To that end, the undersigned hereby **APPOINTS** William J. Pohlman, Esq., of Pohlman Mediation Services, P.O. Box 91211, Columbus, OH 43209-7211, as counsel for Plaintiff for the limited purpose of representing him at a court-scheduled mediation.  Mr. Pohlman has agreed to accept this limited-scope representation.  Plaintiff and his counsel remain free to discuss both the fact and terms of the appointment.  Plaintiff is **ADVISED** that if he accepts this appointment of counsel, he must remain in prompt communication with his counsel.

Plaintiff is **ORDERED** to inform the Court whether he accepts this representation by June 22, 2020.  If Plaintiff accepts representation, the Court intends to refer this case to a settlement conference to be held in July or August 2020.

## V.    CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss (Doc. 12) is **GRANTED in part and DENIED in part**.  Plaintiff is **GRANTED** 14 days in which to file an amended complaint, solely for the purpose of providing additional allegations to support his claim that

Defendant denied him a request for accommodation under the ADA.

      IT IS SO ORDERED.


Date: June 8, 2020                  /s/Kimberly A. Jolson           
                                                  KIMBERLY A. JOLSON
                                                  UNITED STATES MAGISTRATE JUDGE